UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNTED STATES OF AMERICA,

                                                                                             18-cr-609 (S-3) (RJD)

      - against -

                                                                              **NOTICE OF MOTION**

ARTHUR CODNER,

                 Defendant.
-------------------------------------------------------------------X

      **PLEASE TAKE NOTICE,** that upon the annexed affirmation of Kevin J. Keating, attorney for Arthur Codner, and the accompanying exhibits, and upon all prior pleadings and proceedings had herein, the undersigned with move this Court before the Hon. Raymond J. Dearie at the United States District Court, in the Eastern District of New York located at 225 Cadman Plaza East, Brooklyn, New York 11201 for the following relief:

      1.     An Order pursuant to Fed. R. Crim. P. 14(a) severing Mr. Codner's case from his co-defendants;

      2.     An Order dismissing Counts One through Four of the Indictment as they are impermissibly duplicitous;

      3.     An Order directing the Government to disclose any other uncharged acts or crimes that it intends to use against the defendant at the time of trial pursuant to Federal Rule of Evidence 404(b), and impeachment material pursuant to Rule 608 and 609;

      4.     An Order permitting this defendant to join in any and all motions and requests for relief sought by the co-defendants, and

      5.     For such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
May 2, 2022

        Respectfully submitted,

        LAW OFFICE OF KEVIN J. KEATING, P.C.

        /s/ *Kevin J. Keating*
        By: Kevin J. Keating, Esq.
        *Attorney for Defendant, Arthur Codner*
        666 Old Country Road, Suite 900
        Garden City, New York 11530
        (516) 222-1099
        Email: kevin@kevinkeatinglaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNTED STATES OF AMERICA,

                                                                                              18-cr-609 (S-3) (RJD)

      - against -

ARTHUR CODNER,                                                            **AFFIRMATION**
                                                                                    **IN SUPPORT OF**
                                                                                    **OMNIBUS RELIEF**

                             Defendant.
------------------------------------------------------------------X

       KEVIN J. KEATING, an attorney duly admitted to the practice of law before this Court affirms as follows:

       1.       I am attorney for Arthur Codner in the matter and, thus, fully familiar with the facts and circumstances of this case.

       2.       This affirmation is submitted in support of the instant motion seeking an Order pursuant to Fed R. Crim. P. 14(a) severing Mr. Codner's case from his co-defendants; an Order dismissing Counts One to Four of the Indictment as they are impermissibly duplicitous; an Order granting disclosure of Rule 404(b), 608 and 609 Evidence, and a pre-trial hearing as to the admissibility thereof, and an Order granting the defendant leave to join in all pre-trial motions and applications made by the co-defendants in this matter. For the reasons set forth below, the requested relief should be granted.

**Background and the Government's Theory of the Case**

       3.       As the Court is aware, this is a sweeping ten defendant Indictment alleging multiple acts in furtherance of a year long conspiracy. The Government's core theory in the case is that defendant Anthony Zottola, Sr. commissioned purported Bloods Street Gang member Bushawn Shelton to murder Zottola's father, Sylvester Zottola, and his brother Salvatore Zottola. As alleged by the Government, between November 2017 and October 2018, Shelton and others undertook

ongoing efforts to carry out the plan leading to various acts and attempted acts of violence against Sylvester Zottola (Victim 1) and his son Salvatore Zottola (Victim 2). As set forth in the massive trove of discovery materials which have been supplied by the Government through eleven separate discovery productions in this case, these efforts included the following acts:

- In September 2017 a male approached Victim 1 and assaulted him.
- In November 26, 2017, Victim 1 was the victim of an attempted kidnapping. Specifically, while Victim 1 was operating his vehicle, a van pulled in front of his car blocking it in, at which time an individual believed to be Shelton exited the passenger seat of the van wearing a mask and pointed a gun at Victim 1, who miraculously was able to escape in his vehicle.
- On December 27, 2017, Victim 1 was the subject of a gunpoint home invasion robbery during which time he was beaten and had his throat slashed by several perpetrators who fled the scene.
- On April 16, 2018, Victim 2 was menaced by a male who pointed a gun at him outside of his residence, who thereafter fled the scene.
- On June 12, 2018, an individual believed to be Shelton exited a vehicle in front of Victim 1's residence with a gun. Victim 1 was able to fend off the potential attack by himself firing a shot at the perpetrator, who fled the scene.
- On July 18, 2018 Victim 2 was shot multiple times in front of his house.
- On October 4, 2018, Victim 1 was fatally shot while in his vehicle, which was in a drive through lane of a fast food restaurant.

4.   As noted, the Government has supplied a massive trove of discovery materials in this case consisting of, among other things, detailed investigative reports by local law enforcement

concerning each of the aforementioned separate acts of violence perpetrated against the victims; phone records; social media account records; historical cell tower records; license plate reader records, and other materials related to each of the separate acts noted above, and the overall charged conspiracy.

5.  With regard to Arthur Codner, the Government's theory, as reflected in their discovery materials, is that he participated in a *lone event*—the July 18, 2018, assault shooting of Victim 2. Specifically, the Government alleges Codner's involvement in this event to be as follows:

- At 10:37 p.m. on July 10, 2018, Shelton inquired of defendant Snipe through text messages whether Snipe knew anyone "that be renting cars". At about the same time, defendant Ross had been communicating with Shelton regarding looking for a driver. Snype responded that he did, but that he "don't chill with them like that." At approximately 11:55 p.m., Snipe called Avis Car Rental in an unsuccessful effort to rent a car. Snipe's next call was to Codner.

- License plate reader records reveal that, in the early morning hours of July 11, 2018, a vehicle registered to Codner travelled from New York to Englewood, New Jersey. The Government alleges that, at that location, Codner and Julian Snipe met with an acquaintance of Codner's who agreed to lend Codner her vehicle. Next, license plate reader records reveal the borrowed vehicle to leave the Englewood location and travel to the George Washington Bridge. The Government's discovery production includes a photo of an individual paying the toll at the bridge which the Government contends depicts Codner. According to the Government, license plate

- reader records reveal the borrowed vehicle to next travel from the George Washington Bridge to a location within one mile of Victim 2's residence.

- Next, home video surveillance from cameras located around Victim 2's residence reveal that, at approximately 6:35 a.m., a vehicle generally matching the description of the borrowed vehicle pulled in front of Victim 2's residence at which time a passenger in the vehicle (alleged to be defendant Ross) exited the vehicle and shot Victim 2 several times, before fleeing in the borrowed vehicle.

- Finally, the Government alleges that at approximately 7:10 a.m., Codner and Snipe returned the borrowed vehicle to the owner.

6.  As alleged by the Government, Codner's involvement in this sweeping one-year conspiracy spanned approximately six hours, and consisted of him being the driver in the vehicle[1] used in connection with the assault shooting of Salvatore Zottola on the morning of July 18, 2018. There is no allegation that Codner had any involvement in any form in any of the other acts perpetrated against the Zottolas. And, of course, there is no allegation that Codner had any involvement in any form in the murder of Sylvester Zottola which occurred three months after the aforementioned event. In fact, there is no allegation that Codner had any awareness of the existence of Sylvester Zottola, or that he had ever met with or even heard of co-defendant Anthony Zottola, Sr., the individual who purportedly hired Bushawn Shelton to engage in these acts. In fact, whereas the Government alleges that defendant Shelton and others are members of the Bloods Street Gang, no such allegation has been made against Codner.

---

[1] The Government's evidence that Codner was, in fact, the driver of the vehicle *at the time of the assault shooting* is circumstantial, in that there are no witnesses or evidence in any form that actually puts Codner as the driver of the vehicle at the time of the shooting.

4

7. Despite this alleged distinct and quite limited involvement pertaining to an isolated event, Codner is named in each of the four counts of this Indictment related to the conspiracy between Anthony Zottola, Sr. and Bushawn Shelton. Specifically, Count One charges all defendants with Murder for Hire Conspiracy, alleging that the defendants, "did knowingly and intentionally conspire to use and to cause another to use one or more facilities of interstate commerce, to wit: one or more cellular telephones, with intent that one or more murders be committed in violation of New York Penal Law §125.25, to wit: the murders of Sylvester Zottola and John Doe No. 1." (Salvatore Zottola) (18 U.S.C. 1958 (a)). Count Two, charges all defendants with the substantive crime of Murder for Hire, alleging that the defendants used cellular telephones, "with intent that one or more murders be committed in violation of New York Penal Law §125.25, to wit: the murders of Sylvester Zottola and John Doe No. 1." (Salvatore Zottola) (18 U.S.C. 1958 (a)). Count Three charges all of the defendants with Unlawful Use and Possession of Firearms, charging that the defendants used said firearms during and in relation to the crime of violence of Murder for Hire alleged in Count Two (18 U.S.C. 924 (c) (1) (A) (i) (ii) (iiii)). Finally, Count Four charges with the defendants with causing the death of Sylvester Zottola on October 4, 2018 through the use of a firearm.

8. Finally, as in many cases, the charging decision made by the Government in this case, for Codner, was particularly consequential. Despite the fact that, but for a six-hour period during which Codner allegedly borrowed a vehicle from another individual which was used during an assault, since the death of Sylvester Zottola *resulted from the broader charged conspiracy* (even though Codner was utterly uninvolved in that event, and the other acts perpetrated against the Zottolas), upon conviction, Codner faces mandatory life imprisonment.

5

**Mr. Codner's Case Should Be Severed From His Co-Defendants**

9.  Generally, an Indictment or information may charge multiple defendants who allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). In fact, the Supreme Court has recognized a "preference in the federal system for joint trials of defendants who are indicted together" as it promotes efficiency, and prevents the injustice of potentially inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). However, the Governments right to joinder is not unbridled. If the joinder of offenses or defendants in an Indictment appears to prejudice a defendant, the Court may order separate trials (Fed. R. Crim. P. 14(a)).

10. Here, as can be seen, the Court should sever Codner from the other defendants in this case as "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Rittweger*, 525 F.3d 171, 179 (2d Cir. 2008). Specifically, the spillover prejudice to Codner were he to be tried with the co-defendants would be overwhelming. As noted above, Codner's alleged "involvement" in this case was for a six hour period in connection with the non-fatal shooting of Victim 2, during which Codner purportedly operated as a driver. His alleged involvement began and ended with this one event. At trial, it is anticipated that Codner and counsel would sit idly during weeks of testimony related to alleged interactions between defendant Zottola and defendant Shelton, concerning Zottola's hiring of Shelton; testimony from countless law enforcement and other witnesses relating to each of the purported acts engaged in against the Zottolas in furtherance of the charged conspiracy, and detailed inflammatory and prejudicial evidence concerning the murder of Sylvester Zottola, concerning which Codner was without involvement or knowledge. It is anticipated that the testimony against Codner would likely span

6

less than a single day and, as noted, would consist of *circumstantial evidence* that he was, in fact, behind the wheel of the vehicle driven during the single assault shooting in July 2018.

11.     The resultant spillover prejudice attendant to Codner is quite clear and requires little elaboration.  In short, it would be difficult, if not impossible, for a jury to appropriately and objectively analyze Codner's distinct and most limited alleged role in this case in evaluating the circumstantial evidence against him, while sifting through the massive evidence related to multiple acts of violence, including murder, allegedly committed by Shelton and others directed at the Zottolas.  As the Second Circuit has held, "there are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against this co-defendant that a severance is required to prevent prejudicial spillover." *United States v. Spinelli*, 352 F.3d 45, 55 (2d Cir. 2003).  Moreover, beyond the disparity in the volume and magnitude of the evidence against Codner when compared to the related defendants, there are vast categories of evidence which will be admitted during this trial because of the joinder of the defendants, which otherwise would have been inadmissible against Codner—first and foremost, the murder of Sylvester Zottola concerning which there is zero evidence of Codner's involvement or even knowledge.  *See United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990).

12.     Additionally, beyond the overwhelming disparity in the quantum and nature of the evidence between Codner and the co-defendants, here, Codner is additionally prejudiced by his joinder with lead defendant Bushawn Shelton as Shelton is charged in Count Five of the Indictment with being a felon in possession of a firearm 18 U.S.C. 922(g), 924(a)(2).  As such, the jury will additionally infer guilt from his alleged association with "convicted felon" Shelton.  *United States v. Jones*, 16 F.3d 487, 492 (2d Cir. 1994).

7

13. Finally, it could not be credibly argued by the Government that such a severance would prejudice the Government in any material way. The requested severance would not result in two lengthy trials. Instead, such a severance would likely shorten the current trial by a day or two, while at the same time resulting in a quite brief second trial.

14. With this, for the reasons advanced herein, severance should be granted.

**Counts One, Two, Three and Four of the Indictment are Duplicitous**

15. "An Indictment is impermissibly duplicitous where: (1) It combines two or more distinct crimes into one Count in contravention of Fed. R. Crim P. 8(a)'s requirement that there be a separate Count for each offense, and (2) The defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). "If a Court does find a Count of an Indictment to be duplicitous, the Court may dismiss that Count or it may require the Government to elect to proceed upon only one of the distinct crimes charged in the Count." *United States v. Willis*, 475 F. Supp. 2d 269, 272 (W.D. N.Y. 2007), *citing United States v. Aguilar*, 757 F.2d 1418, 1422-23 (9th Cir. 1985). In this case, Counts One, Two, Three and Four of the Indictment are fatally duplicitous.

16. First, the conspiracy alleged in Count One charges Codner in a single, overarching conspiracy, despite the fact that—as the Government is aware—the discovery materials and witness testimony will reveal that Codner had *nothing* to do with virtually the entirety of the year-long events underlying the conspiracy. While it is true that a conspiracy count may have multiple illegal objects, it remains the case that it must be based upon a single, unified agreement. As the United States Supreme Court explained in *Kotteakos v. United States*, 66 S. Ct. 1239 (1946), an Indictment fails to allege such a single conspiracy when it is based upon a central, corrupting figure engaging in separate illegal transactions with multiple counter-parties. That is precisely the case here.

8

17. The substantive Counts Two, Three and Four, fare no better. Each of the Counts detail conduct occurring from November 1, 2017 through October 11, 2018, and the conduct underlying such Counts, as detailed above, spans multiple dates, six separate events, and two separate victims. The likelihood of jury confusion, with the attendant possibility of a non-unanimous verdict is manifest.

18. Moreover, the rampant duplicity is enormously prejudicial to Codner in this case—not merely because of the inevitable confusion it will engender in the jury—but there is a strong argument (if not likelihood) that the Government intentionally crafted the Indictment in this matter in an effort to obscure what would otherwise have been glaring issues related to the legal sufficiency of the charges if they had been alleged separately. Further, it may well be that the Government's motive in crafting the indictment in this fashion went deeper, in that, by bringing Codner into the broader conspiracy *which resulted in death*, Codner faces life imprisonment, a consequence which typically leads similarly situated individuals to cooperate with the Government.

19. In short, the duplicity in each of these charged Counts is evident, and the prejudice to Codner overwhelming. Thus, dismissal is required.

**Disclosure of Rule 404(b), Rule 608**
**And Rule 609 Evidence Should Be Directed**

20. The Court should direct the Government to disclose any uncharged acts or crimes that it intends to use against defendant at the time of trial. The plain language of Fed. R. Evid. 404(b) provides that in pertinent part that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial. . . of the general nature of any [similar act] evidence it intends to introduce at trial. *See United States v. Paccione*, 949 F.2d 1183, 1199 (2d Cir. 1991). The purpose of this pretrial disclosure provision is "to reduce surprise and

9

promote early resolution of admissibility issues." *United States v. Romero*, 1997 WL 727554, * (N.D.N.Y. 1997); *see also United States v. Canty*, 971 F. Supp. 689, 695 (N.D.N.Y. 1997) (same).

21. Courts in the Second Circuit have routinely granted defendants' requests for disclosure Rule 404(b) material unless affirmative showing of good cause was made by the Government. *See, e.g., United States v. Ping*, 1996 WL 262999, *2 (S.D.N.Y. 1996) (requiring the government to disclose prior bad acts evidence it intended to introduce at trial no less than ten days before trial in order to "assure the defense sufficient notice to assemble counter proof"); *United States v. Percan*, 1999 WL 13040, *6 (S.D.N.Y. 1999) (requiring disclosure ten days in advance of trial where Government had not shown good cause to the contrary). Moreover courts have precluded the Government from making use of any Rule 404(b) evidence not disclosed prior to trial unless good cause for its failure to make timely disclosure is shown. *See United States v. Wei*, 862 F. Supp. 1129, 1134 (S.D.N.Y. 1994) (holding that [e]vidence sought to be admitted under [Rule 404(b)] for which at least two weeks pre-trial notice was not given shall be admitted only if good cause is shown to exclude the failure to provide such notice"). Accordingly, this Court should direct that he Government disclose to defendant, at least 30 days prior to trial, any prior crimes and/or bad acts that it intends to use in its case in chief at trial.

22. In addition, pursuant to Fed. R. Evid. 608 and 609(b), we request that the Government be directed to furnish written notice of any prior crimes or acts they intend to use for impeachment purposes should defendant elect to testify at trial, and this Court rule in advance of trial concerning their admissibility.

**The Defense Respectfully Joins In All Motions For
Relief Sought By the Co-Defendants In this Matter**

23.     Counsel for the co-defendants in this matter have moved for assorted relief on behalf of their clients. The defendant herein respectfully joins in each of these requests and incorporates and adopts these motions on behalf of Arthur Codner, as if fully alleged herein.

WHEREFORE, for the reasons set forth herein, it is respectfully submitted that the requests for relief should be granted.

Dated: Garden City, New York
May 2, 2022

Respectfully submitted,

LAW OFFICE OF KEVIN J. KEATING, P.C.

/s/ *Kevin J. Keating*
By: Kevin J. Keating, Esq.
*Attorney for Defendant, Arthur Codner*
666 Old Country Road, Suite 900
Garden City, New York 11530
(516) 222-1099
Email: kevin@kevinkeatinglaw.com